UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE HARPER,<br><br>              Plaintiff,<br><br>     v.<br><br>STATE OF CALIFORNIA, et. al.,<br><br>              Defendants. | Case No. 2:24-cv-10461-FMO-JC<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |

**I.    SUMMARY**

On November 25, 2024, Plaintiff Maurice Harper, who is in state custody, is proceeding *pro se*, and has been granted leave to proceed without prepayment of filing fees ("IFP"), filed a Civil Rights Complaint, pursuant to 42 U.S.C. § 1983 ("Section 1983"), which was soon followed by another complaint, filed on January 28, 2025, that is construed as Plaintiff's First Amended Complaint (or "FAC"). (Docket Nos. 1, 6; see also Docket No. 7).  Plaintiff claims the following Defendants violated his rights under the First and Eighth Amendments,[1] the Americans with Disabilities Act ("ADA"), and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), at the California Men's

---

[1] As noted below, Plaintiff also cites the Eleventh Amendment, but that provision does not provide a basis for relief here.

Colony, San Luis Obispo ("CMC"), where he was previously confined: (1) the State of California; (2) psychological intern/primary clinician Kelsey Mackenzie; (3) psychologist Sonya Jackson; (4) psychological intern Miles Davis; (5) psychologist Sofia Murillo; (6) correctional counselor J. Cavan; (7) registered nurse Emily Malan; (8) medical doctor Dr. Ward; and (9) medical doctor Dr. Jeu. (FAC at 2-12).[2] All Defendants other than the State of California are sued in their individual capacities. (FAC at 9). Plaintiff seeks $200 million in damages. (FAC at 10, 12).

As the First Amended Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

**II.    FIRST AMENDED COMPLAINT**

Liberally construed, the First Amended Complaint alleges the following:

Plaintiff was admitted to the mental health crisis bed ("MHCB") on June 30, 2022, due to "severe symptoms along wi[t]h suicidal ideation." (FAC at 3). It is assertedly "common to infer" that Plaintiff in this condition "needed a higher level of care" in a hospital or other facility. (FAC at 3).

Moreover, the MHCB unit had been notified that day that Plaintiff was Jewish and relied on a kosher diet. (FAC at 6). Plaintiff believes that "any meals that come[] unpackaged [are] unfit for consumption and [are] considered tainted and no longer considered kosher." (FAC at 6). Defendant Mackenzie and the interdisciplinary treatment team (or "IDTT") allegedly were responsible for providing Plaintiff with kosher meals. (FAC at 7). However, Defendant Mackenzie instructed the other team members not to provide such meals, which deprived Plaintiff of "proper sustenance and nourishment." (FAC at 6-7).

///

---

[2]Citations to the First Amended Complaint refer to the page numbers assigned by the Court's Case Management/Electronic Case Filing (CM/ECF) system.

Five days later, on July 5, 2022, Plaintiff passed out while walking toward the phone area. (FAC at 5). This allegedly occurred because Plaintiff had not been served kosher meals. (FAC at 7). When he regained consciousness about thirty minutes later, seven correctional officers were standing around him asking questions. (FAC at 5). The registered nurse – presumably Defendant Malan – then arrived and determined that Plaintiff had a low blood sugar reading of 48. (FAC at 5). The registered nurse did not follow protocol, which was to call the EMT to examine why Plaintiff had passed out. (FAC at 5). A short time later, Plaintiff started urinating on himself. (FAC at 5). He submitted several "sick call slips" to Defendant Dr. Ward, who failed to provide proper medical attention. (FAC at 5).

The following month, August 2022, Plaintiff was transferred to Mule Creek State Prison. (FAC at 5). Plaintiff's incontinence was worsening, and he requested diapers. (FAC at 5). Yet, Defendant Dr. Jeu never made any appointments to determine why Plaintiff had this problem. (FAC at 5).

The First Amended Complaint purports to set forth three claims for relief based on these allegations.[3] (See FAC at 8, 10-12). Claims One and Two both assert violations of the ADA and Plaintiff's Eighth Amendment right to be free from deliberate indifference to his serious medical and mental health needs,[4] along with asserted violations of prison policies, while Claim Three asserts violations of Plaintiff's religious rights under the First Amendment. (FAC at 8, 10-12). As

///

---

[3] Plaintiff raised similar claims and allegations in a previous action in this Court, which Plaintiff voluntarily dismissed on June 20, 2024. (See Case No. 2:23-cv-7823-FMO-JC, Docket Nos. 7-8, 20).

[4] Although Plaintiff also cites the "11th" Amendment as the basis for this right (See FAC at 4, 7-8), it is construed to arise solely under the Eighth Amendment, which is made applicable to the states pursuant to the Fourteenth Amendment. The Eleventh Amendment is wholly inapposite here.

noted above, the First Amended Complaint also alleges a violation of Plaintiff's religious rights under RLUIPA. (See FAC at 6-7).

### III. PERTINENT LAW

#### A. The Screening Requirement

As Plaintiff is a prisoner proceeding IFP on a civil rights complaint against government defendants, the Court must screen the First Amended Complaint and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641-42 (9th Cir. 2018) (discussing prisoner civil rights litigation screening requirement).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing Twombly, 550 U.S. at 555)).

///

1  To avoid dismissal on screening, a complaint must "contain sufficient
2  factual matter, accepted as true, to state a claim to relief that is plausible on its
3  face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of
4  Shelby, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct that
5  plaintiff "must plead facts sufficient to show that [plaintiff's] claim has
6  substantive plausibility"). A claim is "plausible" when the facts alleged in the
7  complaint would support a reasonable inference that the plaintiff is entitled to
8  relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678
9  (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018)
10 ("[A] [Section 1983] plaintiff must plead that each Government-official defendant,
11 through the official's own individual actions, has violated the Constitution."
12 (quoting Iqbal, 556 U.S. at 676)); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071
13 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against
14 *each* defendant" to satisfy Rule 8 requirements (emphasis added)). Allegations
15 that are "merely consistent with" a defendant's liability, or reflect only "the mere
16 possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as
17 required by Rule 8(a)(2)), and thus are insufficient to state a claim that is
18 "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks
19 omitted).
20  At this preliminary stage, "well-pleaded factual allegations" in a complaint
21 are assumed true, while "[t]hreadbare recitals of the elements of a cause of action"
22 and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and
23 quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014)
24 ("mere legal conclusions 'are not entitled to the assumption of truth'" (quoting
25 Iqbal, 556 U.S. at 678-79)), cert. denied, 574 U.S. 1077 (2015). In addition, the
26 Court is "not required to accept as true conclusory allegations which are
27 contradicted by documents referred to in the complaint," Steckman v. Hart
28 Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and

1  "need not [] accept as true allegations that contradict matters properly subject to
2  judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979,
3  988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation
4  omitted).
5       In general, civil rights complaints are interpreted liberally in order to give
6  *pro se* plaintiffs "the benefit of any doubt."  Byrd, 885 F.3d at 642 (citations and
7  internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow
8  the rules of procedure that govern all litigants in federal court, including the
9  Rule 8 requirement that a complaint minimally state a short and plain statement of
10 a claim that is plausible on its face.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.
11 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro
12 se litigants are bound by the rules of procedure." (citation omitted)), cert. denied,
13 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d
14 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights
15 complaint may not supply essential elements of [a] claim that were not initially
16 pled." (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation
17 marks omitted; ellipses in original)).
18      If a *pro se* complaint is dismissed because it does not state a viable claim,
19 the court must freely grant "leave to amend" (that is, give the plaintiff a chance to
20 file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix
21 the identified pleading errors by alleging different or new facts.  Cafasso, U.S. ex
22 rel.  v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation
23 omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc)
24 (citations and internal quotation marks omitted).
25      **B.    Section 1983 Claims**
26      To state a Section 1983 claim, a complaint must allege that a defendant,
27 while acting under color of state law, caused a deprivation of the plaintiff's federal
28 rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations

1  omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).
2  There is no vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676.
3  (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658,
4  691 (1978)).  Hence, a government official may not be held liable under Section
5  1983 unless the particular official's own actions caused the alleged constitutional
6  deprivation.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012)
7  (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013).  A Section 1983
8  plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation.
9  See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).
10 Allegations regarding Section 1983 causation "must be individualized and focus
11 on the duties and responsibilities of each individual defendant whose acts or
12 omissions are alleged to have caused a constitutional deprivation." Leer v.
13 Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping
14 conclusory allegations [regarding causation] will not suffice . . . ." Id. (citation
15 omitted).
16       An individual "causes" a constitutional deprivation basically when he
17 (1) "does an affirmative act, participates in another's affirmative acts, or omits to
18 perform an act which he is legally required to do that causes the deprivation"; or
19 (2) "set[s] in motion a series of acts by others which the [defendant] knows or
20 reasonably should know would cause others to inflict the constitutional injury."
21 Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting
22 Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks
23 omitted).

24 **IV.   DISCUSSION**

25       Plaintiff's First Amended Complaint is dismissed with leave to amend for
26 violation of Rules 8 and 10 of the Federal Rules of Civil Procedure and for failure
27 to state a claim for relief.
28 ///

### A. Violation of Rules 8 and 10

Rule 8(a), as explained above, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and its purpose is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996); see also Cafasso, 637 F.3d at 1058 (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint); McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) (noting that under Rule 8(a) a complaint must contain "sufficient allegations to put defendants fairly on notice of the claims against them").

Here, the First Amended Complaint violates Rule 8 because it fails to give Defendant adequate notice of the claims against them. As noted above, Plaintiff purports to assert three claims. (See FAC at 8, 10-12). However, no names are mentioned in the section where Plaintiff sets forth these three claims. Moreover, several individuals who are listed as Defendants within the First Amended Complaint – such as psychologist Sonya Jackson, psychological intern Miles Davis, psychologist Sofia Murillo, and correctional counselor J. Cavan (see FAC at 9) – are not mentioned in Plaintiff's factual allegations or anywhere else in the First Amended Complaint.[5] Without a clear indication as to which Defendants are being sued on which respective grounds, as well as specific allegations showing what each Defendant did to violate Plaintiff's rights, Plaintiff cannot proceed in this action.

---

[5]Registered nurse Emily Malan is also listed as a Defendant (FAC at 9) but not specifically named in the allegations, though Plaintiff does reference the "registered nurse" (see FAC at 5), which presumably refers to Defendant Malan. Plaintiff's general reference to the IDTT, or interdisciplinary treatment team (see FAC at 7), does not suffice to identify other Defendants, particularly as Plaintiff never specifies which other Defendants, if any, were part of the IDTT.

1    The First Amended Complaint also violates Rule 10(a), which provides that
2 the "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a).
3 Here, the caption/title includes only one Defendant – the State of California. This
4 does not satisfy Rule 10(a). See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-63 (9th
5 Cir.), cert. denied, 506 U.S. 915 (1992).
6    Given these Rule 8 and 10 violations, Plaintiff's First Amended Complaint
7 must be dismissed with leave to amend.

      **B.**    **Failure to State a Claim for Relief**

           **1.**    **Eighth Amendment Deliberate Indifference Claims**

10   Plaintiff claims Defendants were deliberately indifferent to his serious
11 mental health and medical needs in violation of the Eighth Amendment. (See FAC
12 at 4-5, 8, 10-11). To meet the "deliberate indifference" standard, a prison official
13 must "both be aware of facts from which the inference could be drawn that a
14 substantial risk of serious harm exists, and he must also draw the inference."
15 Farmer v. Brennan, 511 U.S. 825, 837 (1994). "If a [prison official] should have
16 been aware of the risk, but was not, then the [official] has not violated the Eighth
17 Amendment, no matter how severe the risk." Gibson v. County of Washoe, 290
18 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted), cert. denied, 537 U.S. 1106
19 (2003), overruled in part on other grounds by Castro v. County of Los Angeles,
20 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc), cert. denied, 137 S. Ct. 831 (2017).
21 Allegations of negligence do not suffice. Estelle v. Gamble, 429 U.S. 97, 105-06
22 (1976). Thus, inadequate treatment due to accident, mistake, inadvertence, or
23 even gross negligence does not amount to a constitutional violation. Estelle, 429
24 U.S. at 105-06; Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). "[A]n
25 official's failure to alleviate a significant risk that he should have perceived but
26 did not, while no cause for commendation, cannot . . . be condemned as the
27 infliction of punishment." Farmer, 511 U.S. at 838.
28 ///

1    Here, Plaintiff alleges that he was placed in the mental health crisis bed on
2 June 30, 2022, due to suicidal ideation and other unspecified "severe symptoms"
3 (see FAC at 3), and he also alleges that the lack of kosher food during this period
4 caused him to pass out five days later, on July 5, 2022, and apparently led to
5 incontinence (see FAC at 5, 7). However, Plaintiff does not provide facts showing
6 that any Defendant was actually aware of a substantial risk of serious harm to
7 Plaintiff and ignored such risk. Regarding his mental health treatment, for
8 example, Plaintiff asserts that "[i]t is common to infer [that he] needed a higher
9 level of care," such as placement in "an ICF or DSH" (FAC at 3), but he provides
10 no clear facts about what treatment Defendants provided and why such treatment
11 ignored a significant risk of which Defendants were aware.
12    Plaintiff's allegations regarding his loss of consciousness and subsequent
13 incontinence are similarly inadequate. He alleges that he passed out on July 5,
14 2022, "while walking to use the phone," and the nurse (presumably Defendant
15 Nurse Malan) then determined that he had low blood sugar. (FAC at 5). Yet,
16 Plaintiff does not describe his physical condition or treatment in the days or hours
17 leading up to this incident, nor does he indicate what treatment he received
18 afterward. Although Plaintiff asserts that Nurse Malan violated "protocol" by
19 neglecting to call an EMT to examine him (FAC at 5), and that Defendant Dr.
20 Ward was "negligent" by not providing "proper medical attention," mere
21 negligence and neglect of policies or protocols do not establish deliberate
22 indifference. Absent any allegations showing that Defendants knowingly
23 disregarded a substantial risk of serious harm, Plaintiff fails to state an Eighth
24 Amendment deliberate indifference claim.

25        **2.    First Amendment Free Exercise Claim**

26    Prisoners "retain protections afforded by the First Amendment" including
27 the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S.
28 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42

1  U.S.C. §§ 2000cc, et seq.  However, as a consequence of incarceration, a
2  prisoner's First Amendment rights are necessarily "more limited in scope than the
3  constitutional rights held by individuals in society at large."  Shaw v. Murphy, 532
4  U.S. 223, 229 (2001).  An inmate retains only "those First Amendment rights that
5  are not inconsistent with his status as a prisoner or with the legitimate penological
6  objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).
7  To state a First Amendment free exercise claim, an inmate must allege that a
8  prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a
9  sincerely held religious belief; and (2) did so in an unreasonable manner – *i.e.*, the
10 official's actions were not "rationally related to legitimate penological interests."
11 See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033
12 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th
13 Cir. 2008) (citations omitted).  "[G]overnment action places a substantial burden
14 on an individual's right to free exercise of religion when it tends to coerce the
15 individual to forego [his or] her sincerely held religious beliefs or to engage in
16 conduct that violates those beliefs."  Jones v. Williams, 791 F.3d at 1031-33
17 (citations omitted).

18       Liberally construed, the First Amended Complaint claims that Plaintiff's
19 First Amendment rights were violated when Defendant Mackenzie failed to
20 provide him with kosher meals in accordance with his religious diet when Plaintiff
21 was confined in the mental health crisis bed (or MHCB), beginning on June 30,
22 2022.  (See FAC at 6-7, 10, 12).  Inmates such as Plaintiff "have the right to be
23 provided with food sufficient to sustain them in good health that satisfies the
24 dietary laws of their religion."  McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir.
25 1987) (per curiam).  However, a constitutional violation occurs only if the
26 available diet substantially burdens the inmate's religious exercise; it does not
27 guarantee Plaintiff's right to obtain any desired food that fits his beliefs.  See Long
28 v. Sugai, 91 F.4th 1331, 1337 (9th Cir. 2024) ("In ruling on a prisoner's First

1 Amendment free exercise claim, [the Court must] first determine whether the
2 challenged prison policy or practice substantially burdened the prisoner's free
3 exercise of his or her religion."); see also Johnson v. Horn, 150 F.3d 276 (3d Cir.
4 1998) (service to Jewish inmate of cold food that complied with kosher
5 requirements satisfied First Amendment rights despite inmate's desire for hot
6 meals), overruled on other grounds, DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000);
7 Gumienny v. McDowell, 2018 WL 6113084, at *5 (C.D. Cal. 2018) ("Although
8 Plaintiff states that he can eat chicken under his religious tenets and sometimes
9 chooses to do so, he has not demonstrated that consuming a diet that lacks chicken
10 forces him to violate his sincerely held religious beliefs."); Moore v. Cucchi, 2011
11 WL 4594907, *4 (D. N.J. 2011) ("It can be inferred from Plaintiff's allegations
12 that he was not satisfied with the non-meat diet he received at [the prison].
13 However, an inmate has no constitutional right to a diet based on personal
14 preference.").

15 Here, Plaintiff alleges that Defendant Mackenzie and others were aware of
16 his religious beliefs and kosher diet upon his admission to the MHCB on June 30,
17 2022, and that Mackenzie "directed the other team members to not provide [him]
18 with kosher meals." (FAC at 6-7). He also asserts that he believes that "any meals
19 that come[] unpackaged [are] unfit for consumption and [are] considered tainted
20 and no longer considered kosher." (FAC at 6). However, he does not provide
21 sufficient facts to show that his sincerely held religious beliefs were substantially
22 burdened. Among other things, he does not specify for how long he was deprived
23 of adequate meals that complied with his kosher diet. See Rouse v. Hansen, 2024
24 WL 1643277, at *5 (W.D. Wash. Mar. 25, 2024) ("[A] temporary delay in
25 accommodating an inmate's request for a religious diet does not constitute a
26 substantial burden." (citations omitted)), report and recommendation adopted sub
27 nom. Rouse v. Mason Cnty. Jail, 2024 WL 1639512 (W.D. Wash. Apr. 15, 2024).
28 Plaintiff also does not indicate clearly what food options were offered to him and

in what respects such options were inadequate or incompatible with his belief. See, e.g., Billie v. Cnty. of Santa Barbara, 2023 WL 3330321, *6 (C.D. Cal. Mar. 31, 2023) ("[M]any courts have found no substantial burden on religious dietary needs when reasonable alternatives – compatible with the prisoner's religious and health needs – were available."), report and recommendation adopted, 2023 WL 3436080 (C.D. Cal. May 11, 2023), appeal dismissed, 2023 WL 11824369 (9th Cir. Sept. 27, 2023); Williams v. Conway, 2022 WL 3018143, *4 (N.D. Cal. 2022) ("Where a prisoner has been provided with food that allows him to 'remain healthy [and] to satisfy the dietary requirements of his religion,' the Ninth Circuit has held that the denial of a prisoner's preferred food was insufficient to burden the prisoner's religious exercise." (citation omitted)); Brown v. Rodriguez, 2021 WL 1238272, at *3 (E.D. Cal. Apr. 2, 2021) ("[P]laintiff should state with specificity how long he was entirely deprived of Halal meals and whether or not he was able to eat any of the food he was given."). Plaintiff therefore fails to demonstrate a violation of his First Amendment right to exercise his religion.

### 3. RLUIPA Claim

RLUIPA prohibits state and local governments from "taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." Holt v. Hobbs, 574 U.S. 352, 357 (2015). Where government action substantially burdens an inmate's religious exercise, RLUIPA permits the inmate to seek prospective injunctive relief against government employees in their official capacity, but suits against officers in their individual capacity are unavailable under RLUIPA. See Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity"); Cochran v. Sherman, 2017 WL 1022789, at *4 (E.D. Cal. Mar. 16, 2017) ("RLUIPA only authorizes

///

official capacity suits against governmental employees for prospective, injunctive relief." (citations omitted)).

Here, liberally construed, the First Amended Complaint asserts a violation of RLUIPA on the same basis as the First Amendment claim – *i.e.*, Defendant Mackenzie's alleged failure to provide Plaintiff with kosher meals in the MHCB unit. (See FAC at 6-7). However, because only prospective injunctive relief is available under RLUIPA, and Plaintiff apparently is no longer subject to the offending conduct due to his transfer to a different prison facility, any RLUIPA claims appear to be moot. See Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001) ("[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility." (citing Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995))); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (claims for injunctive relief related to conditions of confinement were moot where prisoner was transferred to another facility and "demonstrated no reasonable expectation of returning to [the original facility]." (citing Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986))); see also Jackson v. Sullivan, 692 F. App'x 437, 439-40 (9th Cir. 2017) (transferred inmate's RLUIPA claims moot when he had not alleged any adverse consequences at his new facility and that the offending conduct was unlikely to continue even if he were to be transferred back). Plaintiff thus fails to state a RLUIPA claim.

### 4. ADA Claim

Plaintiff's First Amended Complaint asserts that the primary clinician, Defendant Mackenzie, "discriminated against [Plaintiff] because of [his] mental illness" in violation of the ADA.[6] (FAC at 3). To state a claim under Title II of

---

[6] It appears that Plaintiff intends to assert his ADA claim against the State of California (see FAC at 9), which is an appropriate Defendant for this claim. Plaintiff cannot maintain a Title II ADA claim against other Defendants, who are sued only in their *individual* capacities. See City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 610 (2015) ("Only public entities (continued...)

14

the ADA, Plaintiff must allege facts showing that "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability." Vos v. City of Newport Beach, 892 F.3d 1024, 1036 (9th Cir. 2018) (brackets and citation omitted), cert. denied, 587 U.S. 1014 (2019).  Here, even assuming that Plaintiff's unspecified "mental illness" is a qualifying disability under the ADA, Plaintiff fails to provide any facts showing that he was discriminated against *because of* that disability.  Mere conclusory allegations of discrimination do not suffice.  Iqbal, 556 U.S. at 678.  Moreover, inadequate treatment alone does not support an ADA claim.  See Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), overruled in part on other grounds, Castro, 833 F.3d 1060; Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[The ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. . . .  The ADA does not create a remedy for medical malpractice.").  Plaintiff thus fails to state a claim for violation of his rights under the ADA.

///

///

---

⁶(...continued)
are subject to Title II[.]"); Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (A "plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA. . . ."), cert. denied, 537 U.S. 1104 (2003); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ("Title II provides disabled individuals redress for discrimination by a 'public entity.'  That term, as it is defined within the statute, does not include individuals." (citations omitted)), cert. dismissed, 529 U.S. 1001 (2000).

### 5. Claims for Violation of Prison Policies or Protocols

Plaintiff asserts that Defendants' alleged conduct violated "protocol" and certain provisions of the "operational manual." (See FAC at 2-3, 5, 8, 10). A violation of prison rules, policies, or protocols does not itself amount to a constitutional violation. See Peralta v. Dillard, 744 F.3d 1076, 1087 (9th Cir. 2014) (mere failure to follow prison rules not enough to establish constitutional deprivation (citations omitted)), cert. denied, 574 U.S. 1073 (2015); Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (violations of "CDCR operations manual" or other "state departmental regulations," without more, "do not establish a federal *constitutional* violation" (citations omitted; emphasis in original)). Thus, to the extent Plaintiff is attempting to assert Section 1983 claims on that basis, such claims fail.

## V. ORDERS[7]

In light of the foregoing, IT IS HEREBY ORDERED that the First Amended Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within twenty-one (21) days of the date of this Order, Plaintiff must do one of the following:

1. File a Second Amended Complaint which cures the pleading defects set forth herein;[8] or

---

[7]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial matters. To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[8]The Clerk is directed to provide Plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate Plaintiff's filing of a Second Amended Complaint if he elects to proceed in that fashion. Any Second Amended Complaint must: (a) be labeled "Second Amended Complaint"; (b) be complete in and of itself and not refer in any manner to

(continued...)

2. Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

3. File a Notice of Intent to Stand on First Amended Complaint, indicating Plaintiff's intent to stand on the First Amended Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action in its entirety based upon such defects.

**Plaintiff is cautioned that Plaintiff's failure timely to file a Second Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on First Amended Complaint may be deemed Plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: April 7, 2025

                                                       /s/
                        Honorable Jacqueline Chooljian
                        UNITED STATES MAGISTRATE JUDGE

Attachments

---

[8](...continued) the original or First Amended Complaint – *i.e.*, it must include all claims on which Plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what each Defendant did and how that individual's conduct specifically violated Plaintiff's civil rights; (g) state the names of all Defendants in the caption (Fed. R. Civ. P. 10(a)); and (h) not add Defendants or claims that are not reasonably related to the claims asserted in the original Complaint or First Amended Complaint.